20-2348, Lexton Rights v. 33Across. Mr. Burnett, am I saying that right? Yes, Your Honor. Please proceed. Thank you, Your Honor. May it please the Court. Your Honors, the board erred by failing to apply the specifications express definition of the term unused space. As a result, the board conflated identifying blank space on a web page with identifying unused space as a portion of a user display in its analysis of both the Ramanathan and Parkinson references. Well, you take as a given that this is the express definition. So that's the rub, right? I mean, language in the spec, which is kind of cuts against that or suggests this is not an express, exclusive definition, the one that you provided, right? Your Honor, I get that point. I think that the specification clearly contains an express definition. It's at column 2, lines 10 to 12, where the specification says, and I quote, as used herein, unused space refers to a portion of a display that is not being used to display rendered primary content. And I take it the part of the spec that you're talking about that arguably cuts against that is figure 1M and the corresponding text. In column 4, yes. Yes. And so I would say a couple of things about that. First, it doesn't matter whether there is an embodiment and an exhibit, or figure 1M and the corresponding text is described as an alternative embodiment. It doesn't matter whether there is an alternative embodiment that is contrary to or would be read out by the express definition. That was this court's holding in Sinorkim. That's exactly what happened with the example 10 in Sinorkim, which was contrary to the express definition. And this court held that the express definition had to be applied nonetheless, and that the example in example 10 was merely an unclaimed alternative embodiment. I would say that that is, at worst, what happens with figure 1M and the corresponding text. I would also add that figure 1M is perhaps a little bit misleading in the way that it identifies the box at the bottom of the web page off the screen as unused space, because the corresponding text in column 4 explains that the alternative embodiment there involves a pre-rendering process where there's a prediction being made about where unused space will potentially be in the future. And so I'm not even sure that it's an unclaimed embodiment contrary to the definition. Column 5 lines 42 to 50. That also has unused space covered by another application on the screen. So that would also seem to conflict with your definition in column 2. Again, Your Honor, I think that these are examples, at worst, examples in the specification that, even if they are inconsistent. OK, what about column 3, line 37 to 50, switching between tabs in a browser with different unused space? Again, I guess the point I'm making is the examples seem to be piling up of examples, which lead us to believe, since we have to construe, at least me, we have to construe specification in terms of the whole specification. We don't take a sentence in isolation outside the context of the document. It's becoming harder for me to conclude that column 2 represents clear and unmistakable definition in light of all the other locations that wouldn't comport with it. So I think the first response to that is that there is clearly definitional language in column 2 in that line. But you're saying clearly definitional language if you only read that sentence. We don't read a sentence in isolation. We read a specification. So it has to be clearly definitional in light of the whole specification, not in light of the single sentence. Yes, Your Honor. So I think that sentence clearly purports to provide a definition. And then the question is, does the rest of the specification so clear that it overcomes? No, it's not is the rest of the specification so clear it overcomes. I think you misunderstand the burden. The burden is for us to look at a specification and to conclude if it is clearly and unmistakably lexicography, claiming a particular definition. Not to look at a sentence in isolation and then see if anything else overcomes it, but to read the specification as a whole and ascertain whether that specification clearly and unmistakably conveys to a skilled artisan the intent to define. That's the burden. So we look at it all together. You have the burden. Your Honor, getting back to your reference to column three, I think that what's happening there is the specification is explaining that when you're switching between tabs, it's dynamic. And so the assessment of whether there is unused space has to be redone once you switch a tab that may have unused space in a different location. And I think unused space there is being used consistently with the definition. And I would also argue that in the discussion of 1M, the discussion is not inconsistent with the definition in the sense that it is discussing making a prediction about where unused space will be if that language is later moved onto the user display. What about the abstract that says, or on other portions of the display, the broadening term, the abstract? Yeah, sorry, I'm looking to get the context for that quote. Well, it's almost definitional. I mean, I think that that quote is still referring to other portions of the display, not other portions of a web page or content. And I think that that is supportive of the definition of unused space as being part of a display. And I think reading the specification as a whole, it makes a distinction between content and a display very clearly. And the distinction includes that there may be parts of a display that are not content. In other words, you could have a browser window that doesn't take up the whole display, and you could have empty space as part of the display that's the content window. And you may also have an external display that's referenced in the specification that may have its own separate unused space. And then you may have parts of a web page or content that have blank spaces in them that may or may not be part of the display. And that's the key difference between what was in the prior art and what's taught in the 934 patent. In other words, that you can't just look at whether there are blank spots in a web page. What you really need to look at is the user display and whether there are empty spaces not being used to render primary content that exists in the display. And I think it's helpful to think about a Venn diagram here that illustrates the difference between this distinction and the express definition that I would argue is in the specification and the board's definition. So on one hand, imagine a circle that is all the examples of empty or blank space within a user display. And on the other hand, another circle that is empty or blank spaces within content. Those two circles certainly overlap. There are examples where there are empty spots in content that are also on a user display. But there are empty spots on the display that are not in content and empty spots in content that are not in the display. And the express definition in the patent says, as used here in unused space means essentially the display circle. And the error that the board made was to say, well, but there's overlap with the content circle. And therefore, the definition that they adopted is essentially the content circle. In other words, they said, and this is from Appendix 11, unused space must be construed to encompass unused space on a web page whether or not that space is currently visible on the display. Well, that's not the display circle, whether or not it overlaps with the content circle. That's the content circle, whether or not it overlaps with the display. I know there's also been discussion about a line of cases about the high bar to establish lexicography. I would add that all of the cases, that 33 across sites in that context, do not involve any kind of express definition. They're trying to read general statements in the specification into the claims. And there's a much higher bar when there is not expressed definitional language, such as used herein, as there is in this case. Now, assuming for a moment that the court agrees with us on the claim construction issue, that overcomes Grounds 1 through 3. So Ground 1 is anticipation based on Ramanathan. The only argument made by the board or by 33 across is based on the incorrect claim construction. And Grounds 2 and 3 are both obviousness grounds where Ramanathan is used, and there's nothing added. So all of those rely on the incorrect definition and should be reversed. Ground 4 is slightly more interesting. But there, the board dismissed the secondary considerations evidence, relying on its anticipation finding in Ground 1. More specifically saying, because there's that anticipation under Hennepenny, there's no nexus, because whatever this secondary consideration relates to is also in the prior art. But that, of course, all rests on the anticipation finding, as though there would at least have to be vacator. And then turning to Parkinson, so the board also talks about the Parkinson reference in Ground 4. But this analysis of the Parkinson reference, in part, rests on the flawed claim construction, and in part, conflates two different varieties of ads. There are both static ads that go into the margins, which are just like the ads in Ramanathan. And those are discussed in paragraphs 49 and 53 of Parkinson. Paragraph 52 of Parkinson talks about a different embodiment that uses mouse tracking ads. But there, they're tracking just whether the tip of the mouse is over unused space or not. And so even though the mouse is constrained to be in the display, there's no analysis of whether there is an unused space for an ad, and what that space is to identify that space. It's simply presenting an ad next to the cursor, if the tip of the cursor is in space that is not identified as being content. In addition, there's a serious motivation to combine problem, because the board's analysis of motivation to combine Parkinson and Ramanathan turns on the idea of organizational benefits. And those organizational benefits don't make any sense in the context of the mouse tracking part of Parkinson, because that's not part of the div tag structure or the underlying structure of the web page. It's an add-on overlay that's tracking where the mouse is. And so there's no basis to say that there would be additional organizational benefits. And certainly, the board did not wrestle with that issue. And there should be a remand for the board to at least consider that issue in the first instance. Your Honors, I would reserve the balance of my time unless there are any further questions. OK, thank you, Mr. Burnett. Ms. Walsh? May it please the court. I plan on addressing the claim construction issue, followed by the issues relating to Ramanathan and Parkinson, unless the panel has any questions that it would like me to answer up front. First, as stated by Left and Rights Council, many of their arguments turn on a challenge to the board's claim construction of unused space to exist within a display, a term which the board correctly determined to be a portion of the display that is not being used to display primary content. And also finding that the definition of unused space includes unused space on a web page, and that there is no requirement that the unused space be currently visible on a display. Can I ask you about your friend referred to in his briefs and also here today, that statement by the board about encompassing must be, unused space must be construed to encompass unused space on a web page. And did you understand the board's kind of use of the word encompass definition was limiting? I did not understand the board's definition to be limiting to space on a web page. It's fairly clear from the specification that there are embodiments where the unused space is either partially outside of a web page, like part of it is on the web page, part of it is outside of the web page. And there are also embodiments where the unused space is entirely outside the web page. Like 1 and E. So that would, if that were the correct construction of what the board said, it would exclude those two. So one can assume they weren't doing that. Correct. Yes, that is how I understand the board's construction. How does the board's construction comport with column 2, the lines we were discussing? So the lines, the statement at column 2, lines 10 through 12. Mm-hmm. So the board's construction comports with these lines because the description at lines 10 through 12 describes how unused space refers to a portion of the display that is not being used to render primary content. Those lines go on to describe what content is. And so it gives examples such as HTML, XML content, flash, graphics, text, et cetera. Those are things that someone of ordinary skill in the art would recognize to be on a web page. And so it's looking at things that are content that's rendered on a web page. And the language here refers to part of a display, but it can also include space that's on a web page. Well, but what if the web page is not on the display? Isn't it then inconsistent with the language at line 10? As used herein, unused space refers to a portion of the display? So I think that this kind of comes down to a bit of a timing issue that's addressed in claim 1 because the phrase that's being construed here and that the board was addressing is unused space to exist within a display. And in view of that language in the claim and in view of the other embodiments that exist within the specification, that is a statement that the unused space is to exist at some point. It doesn't necessarily have to be existing at the point that it is identified, but the intent is that an ad will be displayed in that unused space. And we believe that that is the best way of squaring the embodiments that we see in the specification with the statement at column 2, lines 10 through 12. When we're looking at the noun, I mean, there are multiple displays, right? I mean, there's a client display, and then there's a client application display area. They're all different, right? I think it depends on where you're looking exactly in the claims and the specification. Generally, a display seems to be, for example, a screen. Display area appears to sometimes refer to what is on a web page. And sometimes it seems to exclude what's on a display. Sometimes it doesn't. Wait, wait. You're telling me that the definition of the word display includes things that are on the website but are not visible on the screen. That feels like an extrinsic evidence kind of question. You're not an expert. You're a lawyer. Did the board make a finding to that extent? The board did not make a finding based on extrinsic evidence. The board did rely on the language to exist within a display at appendix 11. But did the board conclude, as you just suggested, that the definition of display includes things on a website that are not visible? The board did not address that specific question, no. So how can that support the board's conclusion? Again, I would go back to the claim language of the identified unused space to exist within a display. And I believe that the board also relied on the embodiments, such as what's shown in here. But I'm struggling to understand your argument. Is your argument that because the claim says the identified unused space to exist within a display, are you saying it would be superfluous for them to say it has to exist within a display if unused space always had to exist within a display? Is that your argument? Yes, that is one of the things that we have argued in our briefs in support of our claim construction. If it were clear from the specification that the unused space must exist on the display, then there would be no reason for the language to address the idea that the unused space is to exist when a display. Well, maybe it's the rest of that sentence of the claim, which is the identified unused space to exist within a display of the client computing device when an application presents primary contact within the display. So maybe what they're now trying to do is to key in on the temporal context. I think that's correct. And I think the issue here kind of boils down to the claim language refers to a display. And the intent of the invention is eventually to display an ad somewhere where a user can see it. And then the claim language describes how the unused space is to exist within a display when the application is presenting primary content. And so once the content is loaded, and once the portion of the display, or once the unused space appears in a portion of display, it serves an ad. You still have unused space. So I believe that that addresses several of the arguments that we made in support of the board's claim construction. The idea that if unused space has to mean that it's only unused based on display, the remainder of the claim language there is rendered surplicit. Both the board and the court here has recognized that the embodiments support the idea that unused space can include unused space that is identified outside of the display area.  display before it loads. Did the board find, even under the alternative claim construction, that the claims would have been obvious in light of Ramanathan and Parkinson? That is correct. So it's an alternative finding. So for them to prevail, they have to convince us that the claim construction was incorrect. And that the board's alternative findings regarding obvious even under their claim construction were also incorrect. That is correct. Or in fact, lacked substantial evidence because most of their arguments relate to fact questions and the obviousness analysis. That is correct. In ground four, the board found that Ramanathan and Parkinson in combination rendered obvious each of the claims. Even under their construction? Correct. Correct. The gist of that argument was that the Parkinson reference describes a process where the system is basically looking for the position of a user's mouse. The user's mouse is, by definition, pointing at something on the display. So the unused space there is on the display. Left and Right tries to make a distinction between a couple of the embodiments that are disclosed in the Parkinson reference. And we believe that those should not affect the board's ultimate conclusion. Parkinson describes two things. They describe the process of looking for a user's mouse position. And then it also describes a process of basically measuring the space on the web page to determine a place where an ad can go, or secondary content, something like that. These two embodiments are not mutually exclusive because the Parkinson reference describes how they can be used at the same time. The process can basically look at where the margins are and the size of the ad, and then look at the user's mouse position to determine whether to show or hide the ad at the same time. And so contrary to Left and Right's arguments, those are not mutually exclusive. And those arguments do not counsel disturbing the board's findings. In addition, with respect to the motivation to combine, the board credited the testimony of Left and Right's expert in determining that there was a motivation to combine, basically recognizing the benefits of using a div tag that was described in Ramanathan, along with the organizational structure and the process of locating space and using the user's mouse position that was described in Parkinson. The board determined that Ramanathan didn't teach away from Parkinson, and that there was a reasonable expectation of success, as well as determining that it doesn't necessarily indicate that Parkinson was deficient in its organization and Ramanathan supplied what was missing in the weapons. Briefly, with respect to the objective factors of non-obviousness, the board looked at the evidence of long-felt but unresolved need, industry acclaim, and commercial success. For two of those, the board relied solely on the idea that the element was already found in the prior art, specifically Ramanathan. And then in commercial success, the board also noted that the patent owner had presented data relating to market share, but did not give any sort of relative information to determine whether or not that increase in market share represented commercial success such that it would support a finding of non-obviousness. And if there are no further questions, I will conclude. OK. Thank you. Mr. Burnett, you have three minutes left. Thank you, Your Honor. First, going back to Judge Moore's question about column 3 at 33 to 50, that is explaining the difference between figures 1J and 1I, which shows the flipping between different tabs. And when different tabs are open, different unused space becomes part of the display. So I think that that is consistent with the express definition in column 2. Second, there was a lot of discussion when 33 across was talking about alleged surplusage or redundancy in the claim language. First, that was not an argument that was presented to the board and is waived. And second, and perhaps more importantly, the language that they say is surplusage in the claim is reiterating things from the express definition in column 2, and therefore is not inconsistent with the express definition. Moreover, the identified unused space to exist ellipsis when language is not talking about timing. It's not temporal. It's talking about tying or linking a specific area of the display being unused to the primary content that's being displayed. And when there's a change to the primary content because a window is moved or something is scrolled or the content changes for any reason, then that analysis of what on the display constitutes unused space has to be redone. And so it's merely linking unused space on the display as defined at one time versus another. And that's consistent with the change between 1i and 1j discussed in column 3. Finally, as to Judge Moore's question to 33 across about what happens if our claim construction is adopted with respect to ground 4, a critical issue that requires vacater and remand to the board is secondary considerations. As 33 across admitted, at least two of our forms of secondary considerations evidence were rejected by the board under Henny-Penney based on a reliance on the anticipation finding that falls if our claim construction is adopted. Therefore, at a minimum, ground 4 would have to be vacated and remanded for consideration of the secondary considerations evidence. In addition, with respect to ground 4,  in at least part of its analysis or most of its analysis when it was talking about Parkinson, and there are citations that I won't go through here with the limited time. But they're in the blue brief at pages 32 to 33. Now, the board does have a throwaway comment about the mouse always being on the display. So even in our construction, that works. But the board really doesn't wrestle with how that meets the claim term. So go through that analysis. And finally, Judge Proce asked a question about client application display area. And that refers to the client application window, like a web browser window. And the site for that is column 2, lines 45 to 50. Unless there are any other questions, that concludes my argument. OK, I thank both counsel. This case is taken under submission.